IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| CHARLES C. TATUM, JR., | ) |
| Plaintiff, | ) |
| v. | )   6:21-cv-00153-LSC |
| JASPER WATER WORKS AND SEWER BOARD, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OF OPINION

Charles C. Tatum, an African-American male, brings this action against the Jasper Waterworks and Sewer Board, alleging that the Board discriminated against him by denying his request for additional water and sewer taps. Tatum claims that the Board violated 42 U.S.C. § 1981 (Count I) and breached its state law duty to treat citizens fairly (Count II). The Board moved for summary judgment on both claims. For the following reasons, the Board's motion is due to be granted as to the Section 1981 claim. The Court declines to exercise supplemental jurisdiction over the remaining state law claim and will dismiss this claim without prejudice.

I.      Background[1]

Tatum owns a commercial building in the downtown business district of Jasper, Alabama. (*See* doc. 42-6 at 8.) In January 2019, he entered into a lease agreement with Garve Ivey and Joeletta Barrentine. (*Id.* at 11.) Shortly thereafter, Tatum and Ivey decided the building needed a second water and sewer tap to accommodate both tenants. (*Id.*)

Ivey's assistant, Tina Martin, contacted the Board to request the installation of the additional taps and spoke with office manager Diana Smith. (*Id.* at 12.) The parties dispute the details of the conversation between Martin and Smith. Tatum claims that Martin requested additional taps at the back of the building while the Board contends that Martin requested additional taps at the front. (*See* doc 41 at 8; doc. 43 at 6.) In any event, after she discussed Martin's request with a service dispatcher, Smith updated the service order with this entry: "No more water taps are to be made here because of the sidewalks. The sewer is in the back so a tap can

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . .").

be made there for the sewer if needed." (*See* doc. 41 at 9; doc. 43 at 7.) In Tatum's account of the facts, Smith told Martin during a subsequent conversation that the Board could not install additional taps at the back of the building. (Doc. 43 at 7.)

On February 4, 2019, Tatum himself contacted Smith to better understand the situation. (Doc. 43 at 8.) According to Tatum, Smith said that her supervisors had made the decision to deny the request and that she would talk to them. (*Id.*) The supervisors were out of the office for the day, so Smith left a note for them to contact Tatum. (Doc. 41 at 10.) That evening, Tatum emailed Jim Brakefield, the Board's General Counsel, to relay his belief that neighboring white property owners received better treatment. (Doc. 42-6 at 16.) The following morning (around sixteen hours later), Brakefield responded and offered his apology for "any misinformation or miscommunication." (*Id.* at 54.) Further, Brakefield made clear that the Board would provide the requested service if Tatum or his tenants signed up for service with the Board and paid the water tap fee. (*Id.*) Despite receiving Brakefield's response, Tatum did not thereafter attempt to obtain service. (*Id.* at 20.)

## II.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a

whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but should determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358

F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

### III. Analysis

#### A. Section 1981 Claim

To successfully invoke Section 1981 in this context, a plaintiff must establish that "(1) intentional racial discrimination (2) . . . caused a contractual injury." *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021). A plaintiff can marshal direct or circumstantial evidence to show discrimination. *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022). Tatum does not offer direct evidence of racial discrimination and instead proceeds under the *McDonnell Douglas* burden-shifting framework. "To make out a prima facie case, the plaintiff must point to comparators of a different race who were similarly situated in all material respects and were not

subject to the same mistreatment." *Ziyadat*, 3 F.4th at 1296 (internal citations omitted).

Tatum fails to identify a comparator who is "similarly situated in all material respects." *See Lewis v. City of Union City*, 918 F.3d 1213, 1226 (11th Cir. 2019) (en banc). Unlike Tatum, all of the proffered comparators signed up and paid for service. Tatum does not dispute this fact but claims that neighboring white property owners were not initially refused service as he was. Tatum, however, offers no proof of this claim.[2] Absent evidence that an adjacent property owner was "not subject to the same mistreatment," Tatum cannot establish a prima facie case of discrimination. *Ziyadat*, 3 F.4th at 1296.

In a commercial or retail setting (as opposed to employment), a plaintiff must be denied the opportunity to engage in contractual activity to suffer a Section 1981 injury—deterrence alone is insufficient. *See Lopez v. Target Corp.*, 676 F.3d 1230, 1234 (11th Cir. 2012) ("[A] viable § 1981 claim in the retail context must allege that the plaintiff was actually prevented, and not merely deterred, from making a purchase.") (internal citations omitted). Here, Tatum did not suffer a contractual injury. His opportunity to contract was possibly delayed, but he was not ultimately

---

[2] At his deposition, Tatum based this claim on "an educated guess" from his personal observations. (*See* doc. 42-6 at 22.) He conceded that he had not spoken with any white property owners about their experiences with service activation.

denied service. *See Lopez*, 676 F.3d at 1235 (finding no violation of Section 1981 because plaintiff—though a retail clerk refused to serve him—was able to consummate his transaction with a different clerk); *see also O'Connor v. J.C. Penney Corporation*, No. 2:16-cv-02068-RDP, 2018 WL 2416423 (N.D. Ala. May 29, 2018). Tatum declined the Board's services despite the opportunity to obtain them. His claim therefore does not satisfy the strictures of Section 1981.

### B. State Law Claim

In accordance with 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction." This decision is "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). In the interests of comity and fairness, this court therefore declines to consider the merits of Tatum's state law claim. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

### IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is due to be granted as to the Section 1981 claim. The Court declines to exercise supplemental jurisdiction over the remaining state law claim and will dismiss this

claim without prejudice. Tatum may refile this state law claim in state court if appropriate. To the extent the Court relies on evidence to which Tatum objects in his Motion to Strike, it is due to be denied.[3] The Court will enter an Order consistent with this Memorandum of Opinion.

---

[3] To reach its conclusion in this case, the Court does not rely on most of the evidence to which Tatum objects. (*See* doc. 44.) Specifically, the Court does not rely on paragraphs 37 and 38. The Court does rely, in part, on the contents of Brakefield's email from paragraph 42. In the concluding sentences of the email, Brakefield writes: "JWWSB will do the same for you and treat you the same as it treated other business owners. Obviously, you will have to pay for any new water tap and water meter and provide plumbing to the meter as the other business owners did. Additionally, you or whomever is responsible for the new water tap will need come [sic] into to the JWWSB [and] sign up for the service and pay the water tap fee." (Doc. 42-6 at 54.) The critical final portion of the email is not hearsay because (among other reasons) it is an instruction that "is, to a large degree, not even capable of being true or false." *See United States v. Cruz*, 805 F.2d 1464, 1478 (11th Cir. 1986).